## FURBUSH *v.* GOODWIN.

A mortgage, immediately upon its execution and delivery, vests in the mortgagee the seizin of the estate at law and the right of immediate possession, as against the mortgager, where the right of possession is not expressly or by implication from the terms of the deed reserved to him.

In such a case, an action of trespass *quare clausum fregit* will not lie in favor of the mortgager against the mortgagee, for entering peaceably upon the mortgaged premises, and digging up, carrying away and converting to his own use portions of the soil.

The fact that the mortgagee had not the actual possession of the premises prior to the entry, constituting the alleged trespass, will not alter the result.

TRESPASS *quare clausum fregit.*

On the trial, it appeared that the defendant, by his servants, made entry upon the *locus in quo*, and dug up, carried away and converted to his own use a large quantity of the soil thereof, which was the trespass complained of.

It also appeared that, at the time of the commission of

the alleged trespass, the defendant was the assignee of and party in interest in a debt then due and unpaid, and also a mortgage of the *locus in quo,* for the security of the same, from the plaintiff.

The plaintiff contended that as the defendant, or those under whom he claimed, had not at any time prior to the trespass complained of, made any entry upon or taken any possession of the mortgaged premises, said mortgage title in the defendant was no defence to this suit. But the court ruled otherwise.

A verdict being thereupon returned for the defendant, the plaintiff moved that the same be set aside and a new trial ordered, on account of error in said ruling of the court of common pleas.

*R. Eastman,* with whom was *Christie & Kingman,* for the plaintiff.

This action is trespass *quare clausum.* The declaration alleges that the defendant broke and entered the plaintiff's close, and dug up, carried away and converted to his own use a large quantity of the soil of said close.

The defendant pleaded the general issue, with a brief statement that the close was the soil and freehold of the defendant, he being seized and possessed of certain parts thereof (specified) in common, in fee and mortgage.

The plaintiff proved his title and possession, and proved that the defendant gave specific directions to third persons to enter on the premises and commit the acts complained of, and that such third persons, in pursuance of the defendant's direction, as his servants, did enter and perform the acts as he commanded, and also shows the extent of the injury.

The defendant then showed that at the time of the commission of the alleged trespass, there was a subsisting mortgage of the *locus in quo,* made by the plaintiff to secure a note payable to one Lougee; that said Lougee had assign-

ed said note and mortgage to several individuals, designa-
ting the share of each, and that some of these individuals
had assigned their interest in the note and mortgage to the
defendant.

There was no evidence or pretence that the mortgagee,
or any of the assignees, had ever entered upon or taken
any possession of the mortgaged premises; and we con-
tend that the defendant's mortgage interest is no defence to
this action.

The defendant relies wholly on his mortgage title, and
must stand, if he stand at all, upon technically legal
principles. He could not stand a moment upon equitable
grounds. What, then, are the legal principles upon which
he depends? The answer is in his brief statement,—" soil
and freehold in himself, he being seized in fee and mort-
gage." If he has any legal title it is the fee, and he claims
no other. How is the fact, and what are his real interests
in the land? He shows that he is assignee of an interest
in the note and mortgage. In this State, the transfer of the
debt, without deed or writing of any kind, will transfer and
assign all the mortgagee's right and interest in the land
mortgaged. The assignment of the debt is all that has any
effect; this carries with it the mortgage interest, while the
assignment of the mortgage alone, or even an actual deed
of the land by the mortgagee, without a transfer of the debt,
passes nothing. The actual sale of a note, payable to order
and secured by mortgage, may pass all the mortgagee's in-
terest in the land without even the indorsement of the note.
If, then, neither deed nor writing of any kind is necessary
to assign the mortgagee's interest in the land, they are of
no effect beyond suiting the mere convenience of the par-
ties. The whole is equal to all its parts, and if the transfer
of the debt carries all, there is nothing left to be carried by
any other conveyance. All the defendant's interest, then,
in the *locus in quo* was acquired by the transfer of the debt
to him, without deed or writing of any kind whatever.

By the Revised Statutes, ch. 130, §§ 1–4, no convey-ance of the fee in real estate shall be valid to hold the same against any person but the grantor and his heirs only, unless such conveyance is by deed, attested, acknowledged and recorded.

Every estate or interest in lands, created or conveyed without an instrument in writing, signed by the grantor or his attorney, shall be deemed an estate at will only ; and no estate or interest in lands shall be assigned, granted or sur-rendered, except by writing signed as aforesaid, or by ope-ration of law.    Rev. Stat. ch. 130, § 12.

Contracts for the sale of any interest in land are within the statute of frauds.    Rev. Stat. ch. 180, § 7.

How stands the assignment to the defendant ?    It is not by deed or writing.    What interest did he acquire ? His answer is in the words of every decision and opinion in the New Hampshire Reports.    " My interest is not a fee in the land ; it is not an interest in the land ; it is not an in-terest in real estate.    It is but a chattel interest, an incident to the debt, a mere lien upon the land to secure my debt, and, therefore, not within the statute requiring a deed or writing to convey it to me."    This answer, then, defeats his strict legal defence set up,—his " soil and freehold in himself,"—his " seizin in fee of the *locus in quo*.    The very reason given by the courts for holding that the transfer of the debt carries with it the security, is, that the mortgage interest is not, in fact, real estate, but a chattel,—a mere lien upon the land for the purpose of security.

This applies as well between the plaintiff and defendant as to third persons.    If against the plaintiff, the defendant has, in law, a fee or any other estate in the land, he cer-tainly acquired it by the assignment.    He has no deed or writing from the plaintiff to him, conveying any land or in-terest therein.    When he sets up a legal title against the plaintiff, as a justification of a wrongful act, he is bound to prove his title as alleged.    Courts of law will not interpose

equitable principles for the purpose of sustaining and justifying tortious acts. Relying on his legal seizin in fee, and upon the strict rules laid down in *Brown* v. *Cram*, 1 N. H. Rep. 171, and *Chellis* v. *Stearns*, 2 Foster's Rep. 312, the mortgage interest of the assignee is no defence to this action. He has no conveyance of the fee to him, according to the statute.

Notwithstanding the defendant fails in showing a fee in himself as against the plaintiff, yet he may have a lien upon the land for the purpose of security, which the law recognizes and protects for that purpose ; and he may be authorized by law to enter upon the land to take the rents and profits, to prevent waste, and keep the land from being lessened in value, and to foreclose. His right of entry and possession is for the specific purpose of security of his debt. But, we contend, that he cannot set up a right which the law gives him for the specific purpose of security, as a defence or justification for the tortious act committed by him. If he had entered and actually had the possession, the presumption of law might be that he entered for the protection of his interest. But, in this case, he never made any such entry, or held or claimed to hold possession for any such purpose ; and when he attempts to justify the entry complained of, the very purpose of that entry comes in question. In this case, the entry having been by third persons, under the direction and concurrence of the defendant, enables the plaintiff to show the distinctive character and purpose of the entry, and that it was not for any purpose contemplated or authorized by or under the mortgage, but a naked, wrongful act.

In *Great Falls Co.* v. *Worster*, 15 N. H. Rep. 434, which was trespass *quare clausum* between the mortgager and the assignees of the mortgagee, the mortgager set up title and possession ; the assignees, by replication, set up that they were seized of the land in fee and mortgage, and had the right of possession, and, therefore, by means of a dam,

caused the water to overflow the land. On demurrer, the replication was held insufficient for the very reasons that we give in this case,—that the act complained of is not a just exercise of any right under the mortgage, and cannot be regarded, of itself, as a possession under the mortgage title. Without title it is a tortious act, and a mortgage cannot change its character, because it is not the just exercise of any right under the mortgage; that the mortgage was made to secure a debt, and to enable the creditor to obtain payment; not to authorize him to commit the act complained of, for purposes not connected with the debt, and not authorized by the nature of the mortgage. If simply covering the land with water cannot be justified under a mortgage title, the entire destruction and removal of the soil surely cannot be.

Again, if the defendant, not having the fee in the land, claim to enter by authority of law, and that having the right of possession, for the purpose of protecting his interests, this action cannot be maintained, because the gist of the action is the breach of possession. We reply, that the authority is given him by law for certain specific purposes, and it is well settled that if a man abuse the authority given him by the law, he becomes a trespasser *ab initio*; and in trespass *quare clausum*, if the authority be pleaded, the subsequent abuse may be replied. 1 Smith's Lead. Cases 62, note; 3 N. H. Rep. 310; *Ib.* 12 and 42, and cases cited.

For these, we think the mortgage interest of Goodwin is no defence to this action. He fails to show the conveyance to him of a fee, according to the statute of New Hampshire. Relying on authority given by law to enter, he also fails, for the law gives him no authority to commit the acts proved, or to enter for any such purpose.

Even if the defendant stand precisely as the mortgagee would have stood, we contend that the weight of authorities, reason and the true policy of the law sustain this action. The plaintiff was in the actual possession of the

land. The defendant claims that, at law, he is seized in fee of the premises, as against the mortgager. Undoubtedly, this was so before equity principles, in relation to mortgages, were adopted in courts of law. It was stated to be the law in *Brown* v. *Cram*, 1 N. H. Rep. 171. It is so held in Massachusetts at this time, and for that reason it is held there, that the assignment or conveyance of the mortgagee's interest must be by deed, acknowledged and recorded, like the conveyance of any other estate in fee. 8 Mass. Rep. 551; 15 Mass. Rep. 233; 17 Mass. Rep. 419.

In New York it is held otherwise, and that the interest of the mortgagee is a chattel interest, a security for the debt, and, therefore, passes by transferring the debt. In *Runyan* v. *Mersereau*, 11 Johns. 593, which was trespass *quare clausum* by the mortgager against the mortgagee, the plea was soil and freehold in the mortgagee, and the court held that the freehold was not in the mortgagee, but in the mortgager. After saying that " the authorities had been repeatedly reviewed by this court," it is said " the light in which mortgages have been considered, in order to be consistent, necessarily leads to the conclusion that the freehold must be considered in the plaintiff, and he, of course, is entitled to judgment. See also *Jackson* v. *Bronson*, 19 Johns. 325; *Dickenson* v. *Jackson*, 6 Cowen 147.

In *Southerin* v. *Mendum*, 5 N. H. Rep. 420, it is held that the transfer of the debt carries all the mortgage interest in the land, without deed or writing; and since that decision, such is the well settled law of this State; and the same reasons are given throughout, for so holding the law, that are given in New York for holding that, at law as well as in equity, the fee is in the mortgager; and the New York authorities are frequently cited and relied upon as sound law. It being the clearly settled law of New Hampshire that the mortgagee's interest passes without deed or writing, it would be totally inconsistent and absurd to hold that his interest is, at law, a fee against the mortgager or any other person,

and it would also be against the express provisions of the statute.

All this inconsistency is avoided by adopting equity principles in courts of law, and holding that mortgages, before foreclosure, are for purposes of security only. They are so considered by the parties, and so considered by the statute. A mortgage is defined by the Revised Statutes, ch. 131, § 1, as a conveyance for the purpose of security. If the mortgagee apply to a court of law to be put in possession of the mortgaged premises, the statute interposes and says, substantially, to him,—your mortgage title is for the purpose of security only, even against the mortgager, and the writ of possession is withheld two months after judgment, to enable the mortgager to pay the amount found due.

*In Southerin* v. *Mendum*, 5 N. H. Rep. 429, *Richardson*, C. J., says: " In general, a mortgage is now viewed in a court of law in the same light as in a court of equity ;" and in *Smith* v. *Moore*, 11 N. H. Rep. 60, *Parker*, C. J., says " it was found necessary for courts of law to hold the same doctrine with courts of equity on this subject, in order to preserve the just rights of the parties, as understood by them in making contracts of that description." From the case of *Southerin* v. *Mendum* down to *Chellis* v. *Stearns*, 2 Foster's Rep. 312, there is not a decision in which it is held that the mortgagee is really, at law, seized in fee of the mortgaged premises. They extend no further than this,— that for purposes of security only, the mortgagee is entitled to have his interest treated as real estate, that is, he shall have all the advantages for protecting his interests that he would have if it were actually his land. In *Southerin* v. *Mendum* it is held that, for purposes of security, the mortgagee is treated as seized in fee; but for other purposes the law looks beyond the mere form of the conveyance to the real nature of his interest, and treats his estate in the land as a thing widely different from an estate in fee simple.

In *Ellison* v. *Daniels*, 11 N. H. Rep. 280, *Woods*, J.,

says the right of the mortgagee to have his interest treated as real estate extends to and ceases at the point where it ceases to be necessary to enable him to protect and avail himself of his just rights, intended to be secured to him by the mortgage.

In *Parish* v. *Gilmanton*, 11 N. H. Rep. 298, it is held that for the purpose of security, the mortgagee is entitled to have his mortgage interest regarded as real estate ; but in all other respects and for all other purposes, it is to be treated as a chattel interest.

In *Great Falls Co.* v. *Worster*, 15 N. H. Rep. 434, it is said by *Parker*, C. J., that " a mortgagee, until entry, has no right to exercise any acts as owner, and that the mortgager is seized against all the world except the mortgagee, and against him except so far as he may rightfully maintain his seizin under the mortgage." These authorities, with the fact that the mortgagee's interest at law is not such as to require a deed or writing to convey the same, settles conclusively that the " soil and freehold," at law, are not in the mortgagee.

The case of *Chellis* v. *Stearns*, 2 Foster's Rep. 312, is the only one since *Brown* v. *Cram*, in which it is held that, at law, the soil and freehold are in the mortgagee, and it is there so held on the authority of *Brown* v. *Cram*. But the doctrine of *Brown* v. *Cram* is not, at this time, law in this State. It is opposed by the provisions of the statute and by the decisions of this court. If the foundation of *Chellis* v. *Stearns* is not sound, there would seem to be no great force in the remarks relative to the pleading and replication. If the soil and freehold are not, in law, in the mortgagee, the denial of the facts pleaded is all that is necessary. This was done in *Runyan* v. *Mersereau*, before referred to, and the proper issue raised and decided for the plaintiff. If the defendant, instead of soil and freehold, rely on his right of entry to protect his interest under the mortgage, he raises the question of the purposes of the entry himself, and must

show that he entered for a purpose authorized by the nature of his title. If the defendant plead specially, right of entry under his mortgage, the plaintiff may reply, in the nature of a new assignment, that the entry was for a purpose not contemplated or authorized by the mortgage, the same as where in trespass *quare clausum*, a grant of a way, common, &c. is pleaded, if the defendant has used the way or common in a different manner from what he is entitled to do under the grant, the plaintiff must reply in the nature of a new assignment, setting out the abuse. *Green* v. *Jones*, 1 Saund. 299, note 6; *Serehouse* v. *Christian*, 1 Term 560; 1 Chitty's Pld. 624. Where a man abuses an authority or license which the law gives him, if the defendant plead such license or authority, the plaintiff must reply the abuse. 1 Chitty's Pl. 625; Smith's Leading Cases 62, note.

Where a lessor has the right of entry, to view the premises, prevent waste, and make repairs, &c., if he do any damage, or remain longer than is necessary, &c., he is a trespasser; and if he plead his right of entry, the plaintiff may reply the abuse. 2 Rolle's Ab. 561, l. 27; 7 Comyn's Dig. title " Trespass," C. 2.

These cases seem to be adapted to cases of entry under the mortgage title, and the only reason that such "form of pleading" is not found in the old books evidently is, that by the ancient common law the mortgagee was seized in fee of the land to all intents and purposes, subject only to the strict performance of the condition, and, of course, these replications were not applicable. But since the great changes which the law has undergone in relation to mortgage rights, these forms apply, and there seems no good reason why they should not be adopted when necessary.

In section 4 of chapter 199 of the Compiled Statutes, the greatest latitude is given to replications.

In an action for possession, if the mortgagee count on his seizin in fee, the tenant may reply that the complainant's

title is by mortgage, and the court will protect the mortga-
ger's rights, and a writ of possession will not issue till the
expiration of two months, and not then, if the debt and
costs are paid.

In *Chellis* v. *Stearns*, it is said, as a reason why trespass
should not be sustained in that case, that "in equity the
rights of the parties interested in mortgaged property can be
suitably and adequately guarded and secured without doing
violence to the principles or practice of equitable proceed-
ings." This may be so when the mortgagee takes posses-
sion under his mortgage, and holds to take the rents and
profits or to foreclose; but where the perpetrator of a wrong-
ful act is assignee of a small part of the mortgage debt,
which is transferred to him by parol, the note and mortgage
remaining in the hands of a third person, where they were
placed before he acquired any interest in them, no notice
being given to the mortgagee that the wrong-doer has any
interest in the debt or mortgage, and no entry made for any
other purpose than to do the injury complained of, which is
a naked wrongful act, and the damages by destruction of
the property being four times the amount of his portion of
the debt and interest, it would be very doubtful, to say the
least, if the mortgager could obtain any redress by applying
to a court of equity. The assignee never having exercised
or claimed to exercise any right under the mortgage, he is
not obliged to avail himself of the mortgage in any way,
even by collecting his debt, and where the damage would
exceed his claim fourfold, he would not be very likely to do
so. And if, without entering or claiming any right under
the mortgage, he should assign his interest in the debt to
some other person, the court would hardly stretch their
equity jurisdiction far enough to give the mortgager dam-
ages for the injury inflicted.

But, by the constitution of New Hampshire and the
fundamental principles of the common law, the plaintiff, in
this case, is entitled to redress for the injury sustained by

him. A legal right has been violated, and, we think, he should have his remedy by this action.

*Jordan* and *J. S. Wells*, for the plaintiff.

The point made by the plaintiff, in this case, is controlled by the following decisions. *Pettengill* v. *Evans*, 5 N. H. Rep. 54; *Smith* v. *Moore*, 11 N. H. Rep. 55; *Sanders* v. *Reed*, 12 N. H. Rep. 561; *Robinson* v. *Robinson*, 1 N. H. Rep. 161; 8 Mass. Rep. 551; 23 Pick. 1.

WOODS, J. The question raised in this case may be briefly disposed of. It is simply whether a mortgagee can justify his entry upon mortgaged premises as against a mortgager, where right to continue in the possession after the execution of the mortgage is thereby reserved to the mortgagee.

As between the mortgager and mortgagee the legal estate is in the latter, and he is entitled, like other owners, to the immediate possession. And the mortgagee may maintain a real action for the recovery of the possession against the mortgager, or others holding his rights. And he may also maintain an action of trespass against the mortgager for taking down buildings or other waste of the estate, and also for cutting down and carrying away timber without the assent of the mortgagee. In the absence of any agreement for possession by the mortgager, the mortgagee may immediately, and at his pleasure and of strict right, enter into the mortgaged premises, and after such entry he may maintain trespass against the mortgager, who shall continue in possession of the premises thereafter. The mortgage, immediately upon its execution, vests in the mortgagee, and those claiming under him, the seizin as well as the title, and, as against the mortgager, he is regarded in law as the owner of the estate. These principles are fully recognized by this court in *Chellis* v. *Stearns*, 2 Foster's Rep. 312, where the authorities are numerously collected in support of them.

In view of these well settled principles, and in the absence of any decision upon the point under consideration, it would seem difficult to discover how any doubt could be raised as to its proper determination. The defendant had a perfect legal title to the premises, as well as a perfect right of entry into them, and he entered peaceably, in accordance with that right.

The case presented, then, is that of an attempt to charge one with a trespass in entering peaceably upon premises of which he is the owner, and to the possession of which he has a present and perfect right, by one who is in the wrongful possession of them, and for continuing which he himself is, upon well-considered decisions, a trespasser. The fact that the defendant had not at any time prior to the alleged trespass, actual possession of the premises, cannot change the result. A right of entry and possession at the time furnishes a sufficient answer to the action.

But we regard this case as being fully decided by this court in the case of *Chellis* v. *Stearns*, before referred to, and entertain no doubt that the defendant is well entitled to

*Judgment on the verdict.*